UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GLENDA STETNER, a married
individual,

                              Plaintiff,

        v.

CITY OF QUINCY, a Washington
municipal corporation,

                              Defendant.

NO:  2:15-CV-210-RMP

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY
JUDGMENT

BEFORE THE COURT are Plaintiff's Motion for Partial Summary

Judgment, ECF No. 35, and Defendant's Motion for Partial Summary Judgment,

ECF No. 38.  The Court has reviewed the motions and the record, heard oral

argument, and is fully informed.

BACKGROUND

Plaintiff was sexually harassed by her coworker, Brock Laughlin, in the

Spring and Summer of 2014, while she was an employee of the City of Quincy.

ECF No. 37-1 at 5, 6-10.  On August 11, 2014, she reported that harassment to her

supervisor, Carl Worley.  ECF No. 41 at 5.  Despite being asked by Plaintiff to

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

1    delay his response, Worley checked City policy and reported the allegations to City

2    Administrator Tim Snead the following day.  *Id*. at 5-6.  On August 14, 2014, just

3    three days after the allegations were raised, Worley placed Laughlin on

4    administrative leave pending an investigation (to be conducted by an outside party,

5    Dean Mitchell of Canfield & Associates), and prohibited Laughlin from coming to

6    work without obtaining permission from the City.  *See id*. at 11.

7         Dean Mitchell interviewed Plaintiff on August 14, 2014, a day prior to

8    Plaintiff's taking a thirty-day medical leave.  *Id*. at 7.  Mitchell also interviewed

9    Laughlin on August 19, 2014.  *Id*.  During this investigation, Laughlin came into

10   the office only on a limited basis and had to obtain permission from the City before

11   doing so.  *Id*. at 11.  Worley states that he informed Plaintiff that Laughlin would

12   need the City's permission before coming to work and assured her that Laughlin

13   would not be allowed to be around her.  *See id*. at 8.

14        On September 22, 2014, Laughlin resigned effective the first day of October,

15   2014.  *Id*. at 8.  City Administrator Tim Snead stated that "[i]f Mr. Laughlin had

16   not resigned, then he would have been fired based on the results of Mr. Mitchell's

17   investigation."  ECF No. 42 at 4.

18        Plaintiff did not return to work after she went on leave.  *See* ECF No. 42 at

19   28.  The City communicated with her attorney following her leave of absence

20   regarding her return to work.  *See* ECF No. 42 at 28.  Plaintiff notified Defendant

21   that she had been receiving treatment due to the "trauma resulting from sexual

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

1  assaults and harassment she experienced in the workplace," by way of a letter from

2  her counselor, Dr. Callison. *Id*. at 30.  Defendant responded by requesting more

3  information regarding potential accommodations. *Id*. at 32.  On January 13, 2015,

4  Defendant emailed Plaintiff's counsel stating that the City previously had sent a

5  number of questions regarding Plaintiff's condition to Plaintiff's counsel and

6  Plaintiff's medical provider. *Id*. at 34.

7       Dr. Callison subsequently sent Defendant a letter on January 16, 2015,

8  stating that Plaintiff experienced symptoms of Post-Traumatic Stress Disorder. *Id*.

9  at 36.  Dr. Callison's letter also questions the adequacy of Defendant's policies and

10  references the need for the implementation of "comprehensive anti-

11  harassment/abuse training and response protocol that will be supported and

12  enforced through a conscientious and routine human resources effort." *See id*.

13  Without stating how the City's policies were inadequate, Dr. Callison stated that

14  "[u]ntil and unless such protocols are implemented and enforced, I cannot

15  recommend Mrs. Stetner return to work for the City of Quincy in any capacity,

16  regardless of accommodation." *Id*. at 36.

17       Defendant responded on January 26, 2015, by providing Dr. Callison an

18  overview of relevant City policies. *See* ECF No. 42 at 38-42.  On March 19, 2015,

19  Defendant communicated to Plaintiff's counsel that Dr. Callison had not yet

20  responded and Plaintiff had not yet returned to work. *See id*. at 2.

21       On April 1, 2015, Plaintiff's counsel sent the City a list of eleven questions

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

that included references to Plaintiff's desire to return "as an administrative

assistant as she has served for the past several years," to work in a different

building, and requests that there be "clear and concise sexual harassment policies .

. . . that will make available fair and effective methods to report allegations of abuse

. . . ." ECF No. 42 at 47-48.  Five days later, on April 6, 2015, Defense counsel

responded to each of the eleven questions.  *See id*. at 50-52.  Plaintiff responded by

letter dated April 8, 2015, stating "[u]nfortunately, the City's answers to Mrs.

Stetner's questions make clear that the City has chosen to maintain the status

quo—a status unacceptable to Mrs. Stetner and detrimental to her recovery."  *Id*. at

54.

Defendant provided Plaintiff with an Employer Separation Statement on

April 9, 2015, notifying her of the termination of her employment.  *See* ECF No.

42 at 57.  The letter informed Plaintiff that "we are separating you from

employment effective immediately."  *Id*.  In addition, the letter outlined the events

from Defendant's perspective:

> Over the course of the last seven months, the City of Quincy (City) has
> attempted to work with you, your doctor, and your attorney to engage
> in an interactive process to determine the nature and extent of your
> current limitations caused by your medical condition, and whether
> those limitations prevent you from performing the essential functions
> of your job, with or without reasonable accommodation.  We also
> sought, but did not obtain, information about your qualifications so we
> could evaluate whether there were other jobs you could perform.
> ****
> Despite multiple requests, neither your doctor nor your attorney could
> or did provide the City with meaningful information with respect to
> whether there are any reasonable accommodations that would allow

you to perform the essential functions of your position at this time.  In addition, neither your doctor nor your attorney would provide an estimated date when the City could expect you to return to work.  The latest information provided by your attorney indicated you cannot at this time or at any reasonably foreseeable time, perform the essential functions of our position.    The City has provided you with approximately seven months of leave in order to accommodate your medical limitations.  Unfortunately, the City cannot continue to hold your position open indefinitely and therefore must regrettably fill it with someone else.

ECF No. 42 at 57.  The letter concluded by stating that Defendant would send Plaintiff information over the next six months "about all open positions that you might be qualified for.  It will be your responsibility to apply for any such positions . . . ." *Id.*

Plaintiff filed her complaint on August 17, 2015, bringing claims pursuant to 42 U.S.C. § 2000e-2, for gender discrimination; Rev. Code. Wash. 49.60.180, for sexual harassment/hostile work environment and a lack of accommodation for Post-Traumatic Stress Disorder; and alleging a breach of contract.

ANALYSIS

The moving party is entitled to summary judgment when there are no disputed issues of material fact when all inferences are resolved in favor of the non-moving party.  *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F. 3d 1467, 1471 (9th Cir. 1994); Fed. R. Civ. P. 56(c).  If the non-moving party lacks support for an essential element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim.  *See Celotex Corp. v. Catrett*,

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 5

477 U.S. 317, 323.

At the summary judgment stage, the Court does not weigh the evidence presented, but instead assumes its validity and determines whether it supports a necessary element of the claim. *Id.* To prevail at the summary judgment stage, a party must establish that a fact cannot be genuinely disputed and that the adverse party cannot produce admissible evidence to the contrary. FED. R. CIV. P. 56(c). Once the moving party has met their burden, the non-moving party must demonstrate that there is probative evidence that would allow a reasonable jury to find in their favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

**I.  Title VII - 42 U.S.C. § 2000e-2**

Plaintiff alleges that the City of Quincy subjected her to a hostile work environment by its failure to adequately respond to her being sexually harassed by her co-worker, Mr. Laughlin. Pursuant to Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2. The Ninth Circuit recognizes sexual harassment as a form of discrimination stating that "[b]y tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII." *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (citing *Brooks v. City of*

1    *San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)).

2        In *Jordan v. Clark*, we explained that a hostile environment exists when
         an employee can show (1) that he or she was subjected to sexual
3        advances, requests for sexual favors, or other verbal or physical conduct
         of a sexual nature, (2) that this conduct was unwelcome, and (3) that
4        the conduct was sufficiently severe or pervasive to alter the conditions
         of the victim's employment and create an abusive working
5        environment.

6    *Ellison v. Brady*, 924 F.2d 872, 875–76 (9th Cir. 1991) (citation omitted).

7        In this case, Defendant does not dispute that Plaintiff was sexually harassed

8    by her co-worker.  However, the parties dispute the City's resulting liability.

9        "Title VII liability is direct, not derivative: An employer is responsible for

10   its own actions or omissions, not for the co-worker's harassing conduct." *Swenson*

11   *v. Potter*, 271 F.3d 1184, 1191–92 (9th Cir. 2001).  In other words, "[a]n employer

12   is liable for the hostile work environment created by a co-worker unless 'the

13   employer . . . take[s] adequate remedial measures in order to avoid liability.'"

14   *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001)

15   (quoting *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1482

16   (9th Cir. 1997)).

17       "Notice of the sexually harassing conduct triggers an employer's duty to

18   take prompt corrective action that is 'reasonably calculated to end the

19   harassment.'"  *Swenson*, 271 F.3d at 1192 (quoting *Nichols v. Azteca Rest. Enters.*,

20   *Inc.*, 256 F.3d 864 (9th Cir. 2001)).  "This obligation actually has two parts.  The

21   first consists of the temporary steps the employer takes to deal with the situation

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

1  while it determines whether the complaint is justified.  The second consists of the

2  permanent remedial steps the employer takes once it has completed its

3  investigation." *Id*. at 1192.

4      [T]he reasonableness of an employer's remedy will depend on its
       ability to stop harassment by the person who engaged in harassment.
5      In evaluating the adequacy of the remedy, the court may also take into
       account the remedy's ability to persuade potential harassers to refrain
6      from unlawful conduct.

7  *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991).

8      There is no evidence that the City of Quincy was aware of Laughlin's

9  harassing conduct prior to Plaintiff's reporting it to her supervisor, Carl Worley, on

10  August 11, 2014.  ECF No. 41 at 5.  Against Plaintiff's wishes, Worley followed

11  the City's policy and reported her allegations to the City Administrator before

12  placing Laughlin on paid administrative leave.  *Id*. at 5-6.

13      Plaintiff does not allege that she was ever sexually harassed at work after she

14  reported Laughlin's conduct.  However, Plaintiff contends that despite the City's

15  actions to prevent Plaintiff from being harassed by Laughlin after she made her

16  allegations that the City failed to "take event [sic] the mildest form of disciplinary

17  action against Mr. Laughlin."  ECF No. 35 at 9.  Defendant argues that the City's

18  actions complied with the law and were effective in ending Laughlin's harassment.

19      [T]he purpose of Title VII is remedial—avoiding and preventing
       discrimination—rather than punitive. *Gregory v. Litton Sys., Inc.*, 472
20     F.2d 631, 632 (9th Cir. 1973).  Failure to punish the accused harasser
       only matters if it casts doubt on the employer's commitment to
21     maintaining a harassment-free workplace.  Where an employee is not
       punished even though there is strong evidence that he is guilty of

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 8

harassment, such failure can embolden him to continue the misconduct
and encourage others to misbehave.

*Swenson v. Potter*, 271 F.3d 1184, 1197 (9th Cir. 2001).  An investigation "can
itself be a powerful factor in deterring future harassment.  By opening a sexual
harassment investigation, the employer puts all employees on notice that it takes
such allegations seriously and will not tolerate harassment in the workplace.  An
investigation is a warning, not by words but by action."  *Id*. at 1193.

Plaintiff argues that the City failed to adequately discipline Plaintiff, and that
the administrative leave was not real in the sense that Laughlin was able to return
to work on a limited basis.  *See generally* ECF No. 35.  In addition, Plaintiff argues
that she could have come into contact with Laughlin if she had returned from her
medical leave unannounced at the same time when Laughlin had been allowed to
work in the office.  Plaintiff also raises a question as to whether Laughlin received
a positive recommendation for his next job.  However, the Court finds that
Plaintiff's arguments fail to raise a genuine issue of material fact regarding the
adequacy of the City's response.

The Court recognizes that an employer dealing with allegations of sexual
assault must respond promptly to end harassment while respecting the due process
rights of the alleged harasser.  "When an employee accuses a fellow employee of
sexual harassment, the employer must reconcile competing rights:  the accuser's
right to a harassment-free workplace and the accused's right not to be disciplined
without fair procedures and sufficient proof of wrongdoing."  *Swenson*, 271 F.3d at

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

1188-89.

In this case, Defendant had an obligation to take prompt action to end the harassment, which it did.  The City promptly arranged for an investigation by an outside agency, *see* ECF No. 42 at 4; reported Laughlin's actions to the police for possible criminal prosecution, *see* ECF No. 42 at 4; placed Laughlin on administrative leave; and advised him to stay away from Plaintiff, *see* ECF No. 41 at 6.  All of those actions demonstrated Defendant's commitment to taking allegations of sexual harassment seriously, adequately ending Laughlin's harassment, and providing a deterrence to others from engaging in similar behavior.

Throughout the communication between Defendant's and Plaintiff's representatives, Plaintiff contends that Defendant's policies regarding sexual harassment are inadequate.  *See e.g.*, ECF No. 42 at 6 and 47.  Defendant possibly could improve its policies by making all anti-harassment training mandatory and better ensuring that all City employees understand what is appropriate workplace behavior.  However, such imperfections do not vitiate the adequacy of Defendant's prompt remedial actions taken after Plaintiff reported her allegations. Furthermore, in response to Plaintiff's questions about sexual harassment training procedures, the City indicated that although the training is the same as it was when Plaintiff completed her sexual harassment training, the City now will check trainings at the annual evaluation of each employee; supervisors now have

arranged to have quarterly trainings; and in March of 2015, a training that "included refreshing or updating sexual harassment" was held "to include the entire workforce."  ECF No. 42 at 50-51.

The City of Quincy acted promptly when Plaintiff reported sexual harassment at the hands of her co-worker, Brock Laughlin, by placing Laughlin on administrative leave three days later, beginning an investigation, reporting the allegations to the police, and ensuring that Laughlin did not come into contact with Plaintiff at work during the investigation.  Plaintiff does not allege that she was ever sexually harassed by Laughlin after the day that she reported her allegations on August 11, 2014.  On September 22, 2014, while the investigation was still underway, Laughlin resigned effective October 1, 2014.

In consideration of all the facts following Plaintiff's August 11, 2014, discussion with Worley, the Court finds that the City took "prompt corrective action" that was "reasonably calculated to end the harassment."  *Swenson*, 271 F.3d at 1192 (internal quotations omitted).  Plaintiff fails to raise a genuine issue of material fact regarding the adequacy of the City's response following notice of Laughlin's actions.  Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's Title VII claim for a hostile work environment.

**II.  REV. CODE WASH. 49.60.180 – Washington Law Against Discrimination**

This Washington state statute known as the "Washington Law Against Discrimination" ("WLAD") mirrors Title VII as it makes it unlawful "[t]o

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability . . . ."  Rev. Code Wash. § 49.60.180.

Plaintiff brings two claims pursuant to Rev. Code Wash. § 49.60.180, one for a hostile work environment, and one for failure to accommodate her alleged disability.  Plaintiff's first claim for hostile work environment largely mirrors its federal counterpart that the Court previously analyzed, and the Court exercises its supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(a).

### A.  Hostile Work Environment

> The elements of a hostile work environment sexual harassment claim are: (1) unwelcome conduct, (2) based on sex, (3) affecting the terms and conditions of employment, and (4) imputed to the employer.  To impute liability to an employer for a discriminatory work environment created by an employee's coworker, the employee must show:
> . . . (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment. (footnotes omitted).

*Perry v. Costco Wholesale, Inc.*, 123 Wash. App. 783, 791–92 (2004).  "The fact the harassment never happens again is proof that the employer's response was reasonable and adequate as a matter of law."  *Id.* at 794.

In accordance with the analysis of Plaintiff's Title VII claim, the Court finds

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

that Plaintiff fails to raise a genuine issue of material fact regarding the adequacy

of Defendant's response, which the Court finds, as a matter of law for the reasons

analyzed previously, was "reasonably calculated to end the harassment."

Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's

sexual harassment/hostile work environment claim brought pursuant to the WLAD.

CONCLUSION

The Court has granted summary judgment on Plaintiff's only federal claim

under Title VII and the closely-related state law claim under REV. CODE WASH. §

49.60.180.  The Court declines to exercise supplemental jurisdiction over

Plaintiff's remaining state claims: failure to accommodate a disability brought

pursuant to REV. CODE WASH. § 49.60.180 and for breach of contract.  *See* 28

U.S.C. § 1367(c).  These claims are dismissed without prejudice, and Plaintiff may

pursue these claims in state court.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.  Plaintiff's Motion for Partial Summary Judgment, **ECF No. 35**, is

**DENIED**.

2.  Defendant's Motion for Partial Summary Judgment, **ECF No. 38**, is

**GRANTED IN PART AND DENIED IN PART**.  Plaintiff's First Cause of

Action under 42 U.S.C. § 2000e-2 and Second Cause of Action under REV. CODE

WASH. § 49.60.180 for sexual harassment/hostile work environment, are **dismissed**

**with prejudice.**  Plaintiff's Third Cause of Action under REV. CODE WASH. §

1  49.60.180—lack of accommodation and Fourth Cause of Action: breach of

2  contract are **dismissed without prejudice.**

3          The District Court Clerk is directed to enter this Order, provide copies to

4  counsel, **enter judgment in favor of Defendant**, and **close this case**.

5          **DATED** this 22nd day of December, 2016.

6                                      *s/ Rosanna Malouf Peterson*
                                        ROSANNA MALOUF PETERSON
7                                       United States District Judge

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 14